UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| LEAH TOWNSEND, as Special Representative of the Estate of Calvin Miller, <br><br> Plaintiff, <br><br> v. <br><br> BRITTANY R. CHRISTMAS, RN, JOSEPH C. HUNTER, RN, BRIANA E. FRAZIER, RN, ERIC TCHAPTCHET MD, ANONYMOUS HEALTHCARE PROVIDER 1, DIANE ELROD, DO, COURTNEE BRATTON, RN, KIMBERLY PHILLIPS, RN, KYLIE JOHNSON, RN, TRACEY NEBLETT, KIMBRA NIXON, RN, KERRIGAN FEIDER, RN, QUALITY CORRECTIONAL CARE, TIPPECANOE COUNTY, CAPTAIN THOMAS LEHMAN, and TIPPECANOE COUNTY SHERIFF'S OFFICE, <br><br> Defendants. | CAUSE NO.: 4:23-CV-43-TLS-AZ |

**OPINION AND ORDER**

This case arises out of the tragic suicide of Calvin Miller while incarcerated at the Tippecanoe County Jail. This matter is now before the Court on a Motion to Dismiss Second Amended Complaint [ECF No. 53] and a Motion for Summary Judgment as to State Law Claims [ECF No. 55], both brought by Defendants Tippecanoe County, Tippecanoe County Sheriff's Office, and Captain Thomas Lehman ("County Defendants"). For the reasons stated below, the Court GRANTS in part and DENIES in part as moot the Motion for Summary Judgment and GRANTS the Motion to Dismiss.

## FACTUAL AND PROCEDURAL HISTORY

On May 9, 2023, Plaintiff Leah Townsend, as Special Personal Representative of the Estate of Calvin Miller, filed a Complaint [ECF No. 2-1] in the Tippecanoe County, Indiana, Circuit Court against Defendants Brittany R. Christmas, RN, Joseph C. Hunter, RN, Briana E. Frazier, RN, Eric Tchaptchet, MD, Anonymous Healthcare Provider 1, Diane Elrod, DO, Courtnee Bratton, RN, Kimberly Phillips, RN, Kylie Johnson, RN, Tracey Neblett, Kimbra Nixon, RN, Kerrigan Feider, RN, John Doe Medical Provider, and Quality Correctional Care ("Initial Medical Defendants"); Tippecanoe County, Tippecanoe County Sheriff's Office, and Captain Thomas Lehman ("County Defendants"); and John Doe Correctional Officers 1–4.

On June 8, 2023, the County Defendants removed the case to this Court based on the Court's federal question jurisdiction under 28 U.S.C. § 1331. ECF No. 1. On August 26, 2023, the Plaintiff filed an Amended Complaint [ECF No. 35] against the same Defendants. The County Defendants filed a Motion to Dismiss [ECF No. 36] as did the Initial Medical Defendants [ECF No. 42]. The Court granted both motions but gave the Plaintiff leave to file an amended pleading. ECF No. 51.

The Plaintiff timely filed a Second Amended Complaint [ECF No. 52] against Defendants Brittany R. Christmas, RN, Joseph C. Hunter, RN, Briana E. Frazier, RN, Eric Tchaptchet, MD, Anonymous Healthcare Provider 1, Diane Elrod, DO, Courtnee Bratton, RN, Kimberly Phillips, RN, Kylie Johnson, RN, Tracey Neblett, Kimbra Nixon, RN, Kerrigan Feider, RN, and Quality Correctional Care ("Medical Defendants") and Defendants Tippecanoe County, Tippecanoe County Sheriff's Office, and Captain Thomas Lehman ("County Defendants"). The Medical Defendants did not respond to the Second Amended Complaint. The County Defendants filed the instant Motion to Dismiss [ECF No. 53] and Motion for Summary Judgment [ECF No. 55]. The Plaintiff filed a Response in Opposition to County Defendants' Motion to Dismiss

Second Amended Complaint [ECF No. 61], and the County Defendants filed a reply brief [ECF No. 63]. The Plaintiff did not file a separate response to the Motion for Summary Judgment.

The Second Amended Complaint alleges the following facts relevant to the claims against the County Defendants. Calvin Miller was incarcerated at the Tippecanoe County Jail in 2021. Am. Compl. ¶ 18, ECF No. 52. On December 14, 2021, between 4:00 a.m. and 6:00 a.m., Calvin Miller died by suicide while incarcerated at the Tippecanoe Count Jail. *Id.* ¶¶ 1, 19. He was discovered deceased around 6:00 a.m., and rigor mortis had set in, "even though individuals indicated they checked on him around 4:00 a.m. and 5:00 a.m." *Id.* ¶ 35. In at least the months leading up to his suicide, Calvin Miller had reported depression and mental health issues "to correctional officers and medical providers at the Tippecanoe County Jail." *Id.* ¶ 20. He had written "depressed" on his cell walls, which was "seen by, and ignored by, correctional officers and medical providers at the Tippecanoe County Jail." *Id.* ¶ 21. Yet he did not receive any assistance or treatment. *Id.* ¶ 22.

Captain Lehman was the Commander of the Tippecanoe County Jail and was responsible for the supervision of the Tippecanoe County Jail, the inmates/detainees, and those working within the jail. *Id.* ¶ 16. Captain Lehman had a duty to maintain custody and to ensure the care of Calvin Miller or to otherwise delegate that duty to jail deputies, agents, and employees. *Id.* Captain Lehman "was on duty during the time of Calvin's request for medical attention, during his serious needs for medical attention, and/or during his state of deteriorating medical condition." *Id.*

The Plaintiff alleges that the correctional officers who were on notice of and ignored Calvin Miller's mental health deterioration violated his constitutional rights. *Id.* ¶ 23. The Plaintiff alleges that the County Defendants failed to properly train the jail officers to prevent, detect, or respond to mental health issues, such as Calvin Miller's, *id.* ¶ 26, failed to properly

3

train the jail staff on when to put inmates on suicide watch and what suicide watch should entail, *id.* ¶ 27; had a policy, custom, or practice of not putting inmates on suicide watch when they should be and not properly monitoring the inmates on suicide watch, *id.* ¶ 28; have a policy, custom, or practice of understaffing the jail, *id.* ¶ 29; have a policy, custom, or practice of not monitoring inmates on suicide watch frequently enough, *id.* ¶ 30; and have a policy, custom, or practice of trying not to place inmates on suicide watch when they should be, *id.* ¶ 31. The Plaintiff alleges that Calvin Miller should have been on suicide watch, but all the Defendants failed to place him on suicide watch. *Id.* ¶ 32.

Count I alleges a state law claim of medical malpractice against the Medical Defendants only. *Id.* ¶¶ 37–42.

Count II alleges civil rights violations under 42 U.S.C. § 1983 against all Defendants. The Plaintiff alleges that "[t]he actions of the Defendants violated Calvin's rights under the United States Constitution, 42 U.S.C. § 1983, and constituted deliberate indifference," the "Defendants were deliberately indifferent to the serious medical needs of Calvin in violation of the Eighth Amendment," the "Defendants failed to provide medical attention in violation of the Cruel & Unusual Punishment Clause of the 8th Amendment," that the "Defendants . . . maintained policies and/or customs of deliberate indifference to the serious medical needs of Calvin resulting in his death," and the "Defendants failed to manage, supervise, and train the Tippecanoe County Jail and its employees and agents constituting deliberate indifference." *Id.* ¶¶ 45–49. The Plaintiff alleges that, as a result, Calvin Miller died by suicide. *Id.* ¶ 50.

Count III brings a state law negligence claim against all Defendants. *Id.* ¶¶ 52–56.

## MOTION FOR SUMMARY JUDGMENT

The Plaintiff dropped the state law claims against the County Defendants in the Amended Complaint but then named the County Defendants on the state law claim in Count III in the

4

Second Amended Complaint. The County Defendants seek summary judgment on the state law claims in Counts I and III as barred under the Indiana Tort Claims Act for failure to file a Notice of Tort Claim as required by Indiana Code § 34-13-3-8. The Plaintiff did not respond to the Motion for Summary Judgment. However, in response to the Motion to Dismiss, the Plaintiff represents that the addition of the County Defendants to Count III in the Second Amended Complaint was a drafting error; the Plaintiff does not object to dismissal of the state law negligence claim in Count III against the County Defendants. Resp. 1, ECF No. 61. Therefore, the Court grants summary judgment for the County Defendants on the state law negligence claim in Count III. The Court denies as moot the motion as to Count I, which is brought only against the Medical Defendants.

## MOTION TO DISMISS

The County Defendants move to dismiss the § 1983 claim against them in Count II for failure to state a claim. "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that the defendant caused the deprivation of a federal constitutional right and that the defendant acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

Here, the Plaintiff brings a claim of deliberate indifference to Calvin Miller's serious medical needs in violation of the Eighth Amendment, which the Plaintiff alleges resulted in Calvin dying by suicide. "A prison official who acts with deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment," which prohibits cruel and unusual punishments. *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). A plaintiff must show both the objective and subjective elements of the standard: "(1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Id.* (quoting *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)); *see Estelle v. Gamble*, 429 U.S. 97, 104, 106–08 (1976).

On the first prong, "[a]ll agree that suicide is an objectively serious medical condition . . . [and] prison officials cannot intentionally disregard a known risk that an inmate is suicidal." *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020) (citing *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019)); *see Eagan*, 987 F.3d at 693–94 (citing *Rice ex rel. Rice v. Corr. Med. Servs.*,

6

675 F.3d 650, 665 (7th Cir. 2012); *Collins*, 462 F.3d at 760–61; *Hall v. Ryan*, 957 F.2d 402, 406 (7th Cir. 1992))). As for the subjective prong, the plaintiff must show "that the defendant (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Lisle*, 933 F.3d at 716–17 (quoting *Collins*, 462 F.3d at 761). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Eagan*, 987 F.3d at 694 (quoting *Farmer*, 511 U.S. at 837). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* (quoting *Farmer*, 511 U.S. at 838). "In other words, the defendant must be cognizant of the significant likelihood that an inmate may immediately seek to take his own life." *Collins*, 462 F.3d at 761 (citations omitted).

### A.     Captain Thomas Lehman in his Individual Capacity

The Second Amended Complaint alleges that Captain Thomas Lehman was deliberately indifferent to Calvin Miller's serious medical needs in violation of the Eighth Amendment to the United States Constitution by failing to provide protection from suicide. The Defendants argue that the Plaintiff has failed to plausibly state a claim because the Second Amended Complaint does not allege facts from which to draw a reasonable inference that Captain Lehman was subjectively aware that Calvin Miller was at risk of suicide. The Court agrees.

The Second Amended Complaint alleges only that Captain Lehman was "on duty during the time of Calvin's requests for medical attention, during his serious needs for medical attention, and/or during his state of deteriorating medical condition." More generally, the pleading alleges that, in the months prior to his suicide, Calvin Miller reported depression and mental health issues "to correctional officers and medical providers at the Tippecanoe County Jail" and wrote "depressed" on his cell wall, which was "seen by, and ignored by, correctional

officers and medical providers at the Tippecanoe County Jail." There are no allegations from which it can be reasonably inferred that Captain Lehman was aware Calvin Miller had written "depressed" on his cell wall much less that Captain Lehman was aware that Calvin Miller was at a substantial risk of suicide. There are no allegations that the Plaintiff communicated information about his risk of suicide to Captain Lehman personally or that Captain Lehman was aware of any such information and failed to act. There are no factual allegations from which to reasonably infer that Captain Lehman was deliberately indifferent to any such knowledge. *See Lisle*, 933 F.3d at 716–17 ("[Deliberate indifference] requires 'more than mere or gross negligence, but less than purposeful infliction of harm.'" (quoting *Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003))).

As the Court stated in its prior order and contrary to the Plaintiff's renewed, unsupported assertion, it is not enough that Captain Lehman "should have been aware" of the risk that Calvin Miller would die by suicide. *See Collins*, 462 F.3d at 761 ("[I]t is not enough that there was a danger of which a prison official *should have been* aware . . . ." (quoting *Estate of Novack*, 226 F.3d at 529)). To be liable under the Eighth Amendment in a suicide case, "a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing this act." *Estate of Novack*, 226 F.3d at 529 (citation omitted).

The Plaintiff also responds that the allegations in the Second Amended Complaint against "correctional officers" should be considered against Captain Lehman because Captain Lehman was also a correctional officer. This argument is not supported by the drafting of the Amended and Second Amended Complaints. In both, Captain Lehman is identified as the "Commander of the Tippecanoe County Jail" and is not identified as a "correctional officer." As noted by the Defendants, the Amended Complaint described the now-dismissed John Doe Officers as

"correctional officers," and the allegations in question were originally brought against those John Doe Officers, not against Captain Lehman. And the specific allegations against Captain Lehman in the Second Amended Complaint imply that subsequent allegations against "correctional officers" are not against Captain Lehman. Second, even if the factual allegations against the "correctional officers" are understood to be against Captain Lehman, the Plaintiff still has not alleged facts to reasonably infer that Captain Lehman or any unnamed correctional officers were subjectively aware that Calvin Miller was at risk of dying by suicide. The only factual allegations against the correctional officers are that Calvin Miller reported depression and mental health issues in the months prior to his suicide and that he wrote "depressed" on his cell wall.

Because there are no allegations that Captain Lehman was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *Farmer*, 511 U.S. at 837, the Plaintiff has failed to plausibly state a claim against Captain Lehman in his individual capacity for deliberate indifference to Calvin Miller's risk of suicide. *Compare Stevenson v. Maldonado*, No. 24-CV-49, 2024 WL 1406228, at *2 (S.D. Ill. Apr. 2, 2024) (finding that the plaintiff stated a claim under the Eighth Amendment when he alleged that he informed the named officer "that he felt suicidal prior to setting himself on fire" and that the officer "noticed the smoke and heard his screams but walked out of the unit without providing help or informing other officers of the situation"), *Keaton v. Danielson*, No. 23-CV-1657, 2024 WL 1285292, at *2 (E.D. Wis. Mar. 26, 2024) (finding that the plaintiff stated a claim against the named correctional officer when the plaintiff became upset and told the officer "that he felt suicidal" but the officer said "she did not care and walked away," taking no further action), *Coombe v. Green Bay Corr. Inst.*, No. 23-CV-1594, 2024 WL 1051084, at *3 (E.D. Wis. Mar. 11, 2024) (finding the allegations sufficient to state a claim when the plaintiff alleged that he told the named sergeant that he needed to be pulled out of his cell because he was feeling suicidal, in response the

sergeant told the plaintiff to kill himself, and the plaintiff then attempted suicide), *Bergeron-Davila v. Marquez*, No. 23-CV-1260, 2024 WL 914551, at *2 (E.D. Wis. Mar. 4, 2024) (finding that the plaintiff stated a claim against the named correctional officer when the plaintiff told the officer he was suicidal and was going to cut himself, the officer walked away, and the plaintiff cut himself, causing injury), *Robey v. Sanders*, No. 3:22-CV-377, 2022 WL 2904753, at *2 (N.D. Ind. July 22, 2022) (finding that the plaintiff stated a claim against the named officer who was aware the plaintiff posed a risk of suicide and had the means of injuring himself but deliberately turned a blind eye to the risk, failed to take the razor away from the prisoner or alert the medical staff, and told the plaintiff to "[g]o for it" and where the plaintiff attempted suicide the following day), *with Mead v. Vanihel*, No. 2:24-CV-518, 2025 WL 1446030, at *3 (S.D. Ind. May 20, 2025) (finding the plaintiff, who had been in the mental health unit and was placed in the general population where he later cut himself twice and was placed on suicide watch, had not alleged sufficient facts to allow a reasonable inference that the warden knew about his mental health conditions and disregarded them), *Ford v. Bell*, No. 23-CV-1467, 2024 WL 1554135, at *4 (E.D. Wis. Apr. 10, 2024) (finding that the plaintiff failed to state a claim against a named correctional officer when the plaintiff did not allege that the officer "knew the plaintiff was going to harm himself"); *Whitney v. City of St. Louis*, 887 F.3d 857, 860 (8th Cir. 2018) (finding the complaint failed to allege facts to support a deliberate indifference claim where there was no allegation that information known by an unnamed medical practitioner that the plaintiff was having suicidal thoughts was relayed to the individual defendant correctional officer).

      The Second Amended Complaint also alleges that Captain Lehman, as Commander of the Tippecanoe County Jail, was responsible for the supervision of inmates and employees working at the jail and that he had a duty to ensure the care of Calvin Miller or otherwise delegate the duty to jail deputies, agents, and employees. Captain Lehman cannot be liable simply because he

10

was a supervisor. The doctrine of respondeat superior liability does not apply to § 1983 actions because a government official is "liable [only] for his or her own misconduct." *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 677). For a supervisory official to be personally responsible for a constitutional violation, "the supervisory official must have known of, facilitated, approved, condoned, or turned a blind eye to his subordinates' activity, although he need not have directly participated." *Ollison v. Gossett*, 136 F.4th 729, 736 (7th Cir. 2025) (citing *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (quoting *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012))); *see Kemp*, 27 F.4th at 498. The Plaintiff has not alleged any facts to plausibly allege a claim of supervisory liability based on any personal involvement by Captain Lehman.

To the extent the Plaintiff is alleging supervisory liability against Captain Lehman based on "systemic deficiencies at the [jail's] health care facility [that] rendered the medical treatment constitutionally inadequate for all inmates," *Ollison*, 136 F.4th at 735 (citation omitted), the Plaintiff has also failed to state a claim. The Second Amended Complaint alleges that Captain Lehman failed to properly train the jail staff to prevent, detect, or respond to mental health issues, on when to put inmates on suicide watch, and on what suicide watch should entail and that Captain Lehman had a policy, custom, or practice of not putting inmates on suicide watch when they should be, of not properly monitoring the inmates on suicide watch or frequently enough, and of trying not to place inmates on suicide watch when they should be. The Seventh Circuit Court of Appeals has recognized that "[s]enior prison officials may be liable for systemic constitutional violations." *Id.* at 736 (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1428–29 (7th Cir. 1996)). However, a "plaintiff must [not only] demonstrate that there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care," *id.* (quoting *Wellman v. Faulkner*, 715 F.2d

11

269, 272 (7th Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980))), but also "must prove that the warden[] knew of and disregarded a substantial risk of harm to him," *id.* (citing *Farmer*, 511 U.S. at 837)). Again, the Second Amended Complaint contains no facts from which to reasonably infer that Captain Lehman knew of and disregarded a substantial risk of harm by suicide to Calvin Miller.

Accordingly, the Plaintiff has failed to state a claim against Captain Lehman in his individual capacity for a violation of Calvin Miller's Eighth Amendment rights. Because the Plaintiff has failed to plausibly allege a constitutional violation by Captain Lehman, the Court need not address Captain Lehman's defense of qualified immunity. *See Tucker v. Williams*, 682 F.3d 654, 660 (7th Cir. 2012) ("Because we do not find a constitutional violation, we need not and do not address Williams' qualified immunity defense." (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009))).

**B.    *Monell* Claim against the Tippecanoe County, Tippecanoe County Sheriff, and Captain Lehman in his Official Capacity**

As for the *Monell* claim, which is properly brought only against the Sheriff,[1] a municipality can only be liable under § 1983 when a constitutional deprivation is inflicted because of an express policy, a widespread practice, or a person with final policymaking authority. *See Orozco v. Dart*, 64 F.4th 806, 823 (7th Cir. 2023) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 675 (1978)). Therefore, there can be no *Monell* liability if there is no deprivation of a constitutional right. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The Plaintiff has not alleged any facts indicating personal involvement by the Sheriff related to

---

[1] The Second Amended Complaint brings the *Monell* claim against Captain Lehman in his official capacity, the Tippecanoe County Sheriff, and Tippecanoe County. The Defendants contend that the *Monell* claim based on inadequate policies and training are only properly brought against the Sheriff, who is the constitutional officer responsible for caring for the Tippecanoe County Jail and its inmates. *See* Ind. Const. Art. 6, § 2; Ind. Code § 36-2-2-24(a); Ind. Code § 36-2-13-5(a)(7); *Taylor v. County of Allen*, No. 1:20-CV-477, 2021 WL 3912550, at *3 (N.D. Ind. Sept. 1, 2021).

Calvin Miller's death by suicide. And, as discussed above, the Plaintiff has not alleged facts to plausibly state a claim of a constitutional violation by Captain Lehman or other correctional officers. Thus, there can be no *Monell* liability for the Sheriff. *See, e.g.*, *Whitney*, 887 F.3d at 860–61 (finding no *Monell* liability absent an underlying constitutional violation where the plaintiff failed to state a claim of a constitutional violation against the named correctional officer and also against unnamed jail personnel as he had alleged no facts to support the claim that the named or unnamed jail personnel had knowledge that the plaintiff was in the process of dying by suicide or suspected that he might be engaging in an act of self-harm).

Even if the Plaintiff had alleged sufficient facts against Captain Lehman or unnamed correctional officers to state a constitutional violation, the Plaintiff still has not alleged facts sufficient to state a claim for *Monell* liability. The Plaintiff must allege facts to reasonably infer that the constitutional violation was caused by an official policy, a widespread practice or custom, or an official with policy-making authority and must also allege facts to reasonably infer that the municipality's action was the "moving force" behind the constitutional violation. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). The Second Amended Complaint alleges that the County Defendants had policies, customs, or practices of "not putting inmates on suicide watch when they should be"; "not properly monitoring inmates on suicide watch"; "understaffing the jail"; "not monitoring inmates on suicide watch frequently enough"; and "trying not to place inmates on suicide watch when they should be." These allegations are not factually linked to the allegations regarding Calvin Miller's death because there are no facts from which to reasonably infer that he should have been on suicide watch, that he was on suicide watch, or that the jail was understaffed. The Second Amended Complaint also alleges that the County Defendants "failed to properly train the jail staff to prevent, detect, or respond to mental health issues such as Calvin

13

Miller's." While this allegation is more closely tied to Calivn Miller's statements to jail staff about mental health issues, this is a bare assertion unsupported by any factual allegations.

There is no heighted pleading standard for *Monell* claims, *see White v. City of Chicago*, 829 F.3d 837, 843–44 (7th Cir. 2016) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. and Coord. Unit*, 507 U.S. 163, 164 (1993)), but a plaintiff nevertheless "must allege facts permitting a reasonable inference that the practice is widespread and that the specific violations complained of were not isolated incidents," *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)). "Allegations of a few sporadic examples of an improper behavior will not suffice." *Id.* (quoting *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021)). Here, the Plaintiff has not alleged any facts to create the inference of a widespread practice, and the two cases the Plaintiff cites—*Snukis v. Taylor* and *Nally v. Obaisi*—are distinguishable.

In *Snukis v. Taylor*, a Fourth Amendment excessive force case, the court found the plaintiff had sufficiently alleged a custom or practice of a de facto "code of silence" of failing to accurately report or adequately investigate uses of excessive force by the police department and failing to discipline those officers, which allowed the officers, including the defendant officers, to use excessive force "with impunity and without fear of retribution." No. 3:21-CV-135, 2022 WL 2305697, at *10 (S.D. Ind. June 27, 2022). However, unlike the complaint in this case, the *Snukis* complaint contained a detailed description of the encounter between the decedent and the police, identifying who allegedly took certain actions that led to the decedent's death. *Id.* at *2, 11. That complaint also describes the defendants' actions (or lack thereof) following the decedent's death but before an investigation had been completed. *Id.* And, the court found the allegations in the complaint regarding a police union contract containing provisions allowing officers to keep quiet when their improper use of force was being investigated further supported

14

the allegation of a de facto municipal "code of silence." *Id.* at *11. The complaint also contained allegations of a lack of TASER training and training on the dangers of positional and compression asphyxia. *Id.* at *2.

In *Nally v. Obaisi*, the court found that, "[t]he facts, taken as they must in Nally's favor, reflect that Nally suffered from severe ongoing pain and that, despite frequent medical requests and repeated visits to Wexford's practitioners, those symptoms were never diagnosed, managed, or treated." No. 17-CV-2902, 2019 WL 195022, at *2 (N.D. Ill., Jan. 25, 2019). Regarding *Monell* liability, the court found that the allegations did not support many of the alleged policies asserted by the plaintiff. *Id.* However, the complaint contained allegations that the plaintiff fell while being escorted in restraints; he requested emergency medical attention based on pain in his left knee, rib cage, and jaw; his request was disregarded; he continued to experience pain from his injuries; and he attempted to get treatment in various ways. *Id.* at *1. The court found that the length of Nally's undiagnosed and untreated "severe pain" lent strong circumstantial support to the allegations that Wexford had policies requiring employees to deny care due to budgetary constraints, failed to train and supervise its employees, and had policies or practices against providing inmates with pain medication. *Id.* at *2. Recognizing that the incorporation of complaints from other cases is generally disfavored, the court also recognized that the plaintiff referenced multiple complaints asserting a similar policy weighing patient care against budgetary considerations. *Id.*

There is not a similar level of factual support in this case. The Second Amended Complaint alleges that Calvin Miller died by suicide on December 14, 2021, between 4 a.m. and 6 a.m., that he wrote items such as "depressed" on the wall of his cell, and that he reported depression and mental health issues to correctional officers and medical providers prior to his death but did not receive treatment. These facts do not plausibly state a claim of deliberate

15

indifferent to a risk of suicide by Calvin Miller or that a County Defendant's policy or failure to train amounted to deliberate indifference by the County Defendants and was the "moving force" behind his death by suicide.

For all these reasons, the Plaintiff has failed to state a claim of *Monell* liability against the County Defendants.

C. **Dismissal With or Without Prejudice**

The Defendants do not address whether the dismissal should be with or without prejudice. As noted by the Plaintiff, "if a district court dismisses for failure to state a claim, the court should give the party one opportunity to cure the problem." Pl. Resp. 6, ECF No. 61 (citing *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010)). Here, the Plaintiff was already given an opportunity to amend to cure these same deficiencies and has failed to do so in the Second Amended Complaint. The Plaintiff has not expressly requested a second opportunity to amend, nor has she identified how she would cure these deficiencies. District courts have "'broad discretion' to deny leave to amend, 'where there has been undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.'" *Huon v. Denton*, 841 F.3d 733, 745 (7th Cir. 2016) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). The Court finds that dismissal with prejudice of these claims is appropriate because the Plaintiff has not shown that she can state a plausible claim for relief against these Defendants. *See O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 348 (7th Cir. 2018) (affirming dismissal and denial of motion to amend because none of the proposed theories "push[ed] the original claim into the realm of plausibility"); *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might

cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing.").

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES as moot in part the County Defendants' Motion for Summary Judgment [ECF No. 55], granting summary judgment on the negligence claim in Count III for Defendants Tippecanoe County, Captain Thomas Lehman, and Tippecanoe County Sheriff's Office and against Plaintiff Leah Townsend. The Court GRANTS the County Defendants' Motion to Dismiss Second Amended Complaint [ECF No. 53], dismissing with prejudice Count II against Defendants Tippecanoe County, Captain Thomas Lehman, and Tippecanoe County Sheriff's Office.

The Second Amended Complaint remains pending only on Counts I, II, and III against the Medical Defendants, who failed to respond to the Second Amended Complaint.

SO ORDERED on July 30, 2025.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT